UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Orlando Division

Case Number: 6:18-cv-1742-GAP-TBS

LYNNE M. GIBSON, Ph. D.,
f/k/a Lynne M. Gleiber,

    Plaintiff,

vs.

JETBLUE AIRWAYS CORP.,

    Defendant.
_____/

### Plaintiff's Response to Defendant Jetblue Airways Corporation's Partial Motion to Dismiss Plaintiff's Complaint

Plaintiff, Lynne M. Gibson, Ph.D., responds as follows to Defendant Jetblue Airways Corporation's Partial Motion to Dismiss Plaintiff's Complaint [DE 25]:

### Introduction and Summary

Defendant's motion is a two-pronged attack, **First**, as essentially a summary-judgment motion[1] directed at a charge of discrimination that was sloppily drafted by an employee of the City of Orlando Office of Human

---

[1]See, e.g., Bryant v. Rich, 530 F.3d 1368, 1370 (11th Cir. 2008) (In prison-rights action, where the threshold issue was a failure to exhaust administrative remedies, "[d]efendants filed motions to dismiss, which the district court treated as motions for summary judgment.")



**The Amlong Firm** • 500 Northeast Fourth Street • Fort Lauderdale, FL 33301 • 954.462.1983

Relations, which, along with the Equal Employment Opportunity Commission, to which it transferred the file, neglected to amend the charge to reflect that the threatened termination actually occurred January 28, 2016, even though the EEOC included the termination in its investigation, and, **Second**, a motion to dismiss Dr. Gibson's hostile environment claims as not alleging behaviors that it mistakenly characterized as not being "severe **and** pervasive" enough, Defendant's Motion, at 2, to create an actionable hostile environment.

Defendant's motion seeks relief, the granting of which would contravene circuit precedent in each instance.

## Statement of the Facts

### As to the Charge of Discrimination

Shortly after being hospitalized for five days following an anxiety attack that flowed from her direct supervisor, Therese Schmidt, having told her that she wanted Dr. Gibson to resign, or she would fire her, DE 1, at 10-11, Paragraphs 23-28, Dr. Gibson on November 13 visited the City of Orlando Human Relations Office ("HRO"), a deferral agency for the Equal Employment Opportunity Commission ("EEOC"), where an intake worker

filled out a Charge of Discrimination for her to sign. Gibson Declaration, at 1, ¶ 2;[2,3] Defendant's Motion, Exhibit A, DE 25-1.

Shortly following her termination January 26, 2016, DE 1, at 2-4, 6, Dr. Gibson telephoned the HRO to ask that her charge be amended, since she considered it to be in retaliation for her having filed the November charge. Gibson Declaration, at 1, ¶ 5. She was told, however, that she would have to contact the EEOC's Miami office. Id. at ¶ 6. She did contact the Miami office, and said that she wanted the charge amended. Id. at ¶ 7. She was told, however, that nothing could be done until there was an invetigator assigned. Id. at ¶ 8. That did not happen to September 2017. Id. at 2, ¶ 9.

Nonetheless, the EEOC investigated not only the termination but other events that transpired subsequent to Dr. Gibson's original charge—as evidenced by the position statement submitted by Jet Blue's defense counsel's firm dated December 15, 2016, which was sent to Dr. Gibson for a response. Gibson Declaration, at 2, ¶ 10, Attachment 2.

---

[2]The Unsworn Declaration of Lynne Gibson, Ph.D., Under Penalty of Perjury, Pursuant to 28 U.S.C. § 1746, in Opposition to Defendant's Motion to Dismiss, is appended as Attachment 1.

[3]Bryant, 530 F.3d at 1374, citing Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003) ("Instances exist — such as those involving jurisdictional issues — when judges may resolve factual questions. One such instance is when a judge must decide a motion to dismiss for failure to exhaust nonjudicial remedies.")

Dr. Gibson did a point-by-point written reply.  Gibson Declaration, at 2, ¶11; Attachment 3.

Dr. Gibson has requested a copy of the EEOC file, but has yet to receive it.  Gibson Declaration, at 2, ¶ 12;  Attachment 4.

**As to the Hostile Environment**

The allegations supporting Dr. Gibson's claims of a hostile environment at set forth in the Complaint for Damages and Injunctive Relief—Jury Trial Demanded, DE 1, at Paragraphs 1, 12-33 and 37(a)-(e).

## Governing Legal Principles

**As to the Charge of Discrimination**

Realizing that pro se discrimination litigants should not suffer from their own lack of legal acumen, of for the mistakes of the EEOC, the courts long ago adopted rules of lenity towards the administrative process that ensures both that victims of employment discrimination get access to courts and that employers get fair warning to defend themselves, or even to resolve matters pre-suit, through the EEOC's conciliation mechanism.

Thus, as stated in the seminal Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970):[4]

> Mindful of the remedial and humanitarian underpinnings of Title VII and of the crucial role played by the private litigant in the statutory

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Court of Appeals for the Eleventh Circuit held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

>scheme, courts construing Title VII have been extremely reluctant to allow procedural technicalities to bar claims brought under the Act. Consequently, courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity, resolved them in favor of the complaining party.

Id. at 460-61.

Thus,

**One**, an employment-discrimination plaintiff's complaint "may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission," Sanchez, 431 F.2d at 466, quoting King v. Georgia Power Co., 295 F. Supp. 943, 947 (N.D. Ga. 1968). "In other words, the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id.

**Two**, no particular form is needed for a charge of discrimination. "[A] "filing is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf," Fed. Express Corp. v. Holowecki, 552 U.S. 389, 404 (2008). The EEOC's current regulation on "[c]ontents of charge; amendment of charge," 29 C.F.R. § 1601.12 specifies that "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. . . ."

***Three***, charges can be amended at any time "to clarify and amplify allegations made therein, and such amendments relate back to the original filing date," and may even be amended to "alleg[e] additional acts constituting unlawful employment practices not directly related to or growing out of the subject matter of the original charge," if done in a timely fashion, Sanchez, 431 F.2d at 458, quoting 29 C.F.R. § 1601.11 (1970).[5]

***Four***, deadlines can be expanded to accommodate delays caused by "'such fortuitous variables as workload, mistakes, or possible lack of diligence of EEOC personnel.'" Franks v. Bowman Transportation Company, 495 F.2d 398, 405 (5th Cir. 1974), quoting Beverly v. Lone Star Lead Construction Corp., 437 F.2d 1136 (5th Cir. 1971).

**As to the Hostile Environment**

A claim for hostile environment arises when others in the workplace seek effectively to make someone's life—based on that person's being within a protected category or engaging in protected activity—so miserable that if effects a term or condition of his or her employment.

---

[5]The current version of the EEOC Regulation, 29 C.F.R. § 1601.12(b), provides, in pertinent part:

> A charge may be amended . . . . to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. . . .

The phrase "hostile environment" is often associated with gross sexual misbehavior, see, e.g., Faragher v. City of Boca Raton, 111 F.3d 1530, 1541 (11th Cir. 1997)(en banc), reversed, 524 U.S. 775 (1998), Barkett, J., dissenting ("an employer cannot insulate itself from liability by abandoning its employees in a remote location to be supervised by someone who makes their work lives miserable by offensive touching and an atmosphere of sexually offensive comments, suggestions and innuendo").  Sometimes it manifests in management's "frequently ma[king] flagrant, revolting, and insulting racially derogatory remarks towards and in the presence of blacks." E.E.O.C. v. Beverage Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990). Sometimes it is accomplished by supervisors' letting an older worker know that his "days are numbered," that his "life's over with" and that he is "going to be brought up on more charges" to the extent that a co-worker would testify that one of the bosses was "trying to make 'Terry's life so miserable he would quit.'"  Terry v. Ashcroft, 336 F.3d 128, 152 (2d Cir. 2003) (reversing summary judgment against Immigration and Naturalization Service special agent).  Sometimes it is done by bullies making life miserable for employees who blow the whistle.  See, e.g., Gowski v. Peake, 682 F.3d 1299 (11th Cir. 2012) (affirming jury verdict for a retaliatorily hostile-environment at a Veterans Administration hospital):

> Gowski and Zachariah were targeted with a campaign to force them to resign by limiting their privileges and their access to positions within the hospital. They were removed from committees and projects,

>prohibited from conducting research, reassigned to different wards, and given low proficiency ratings.

682 F.3d at 1313-14.  In other words, an actionable hostile-environment can take many forms.

Uniformity is not necessary.  To be actionable, the behavior directed at someone in a protected category, such as age, see, e.g., EEOC v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1247 (11th Cir. 1997) ("controller and general manager at the dealership, in particular, began making demeaning, age-related comments on a daily basis about her physical and mental condition"), simply must be "sufficiently severe *or* pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Gowski, 682 F.3d at 1311, quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (emphasis supplied).

And even through federal and state employment-discrimination law "comes into play before the harassing conduct leads to a nervous breakdown," Harris, 510 U.S. at 22, just because a victim might experience such a reaction not only would not take the harassment out of the realm of being actionable, but it clearly would satisfy the subjective part of the test.

The objective test for pervasiveness can be satisfied by the frequency of  occurrences over a short period of time.  See, e.g., Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) (three to four utterances of racial slurs daily towards a Mexican-American employee by a

co-worker satisfies pervasiveness test); Johnson v. Booker T. Wash. Broadcasting Service, 234 F.3d 501, 509 (11th Cir. 2000) ("roughly fifteen separate instances of harassment over the course of four months");

**Applying the Law to the Facts in the Case at Bar**

Following several months of intense I-don't-want-you-here behavior directed at a black, 52-year-old Ph.D. by her 30-something supervisor, Lynne Gibson, Ph.D., actually did have a nervous breakdown, or at least the beginning of one.

Therese Schmidt's behavior towards Dr. Gibson was different than that which she directed at her otherwise all white, substantially younger staff. Her constant criticisms of Dr. Gibson were bogus—and perhaps even contrived.

As a whole, that constituted an objectively "severe *or* pervasive," Harris, hostile environment that impacted the terms and conditions of Dr. Gibson's employment. Then, when Ms. Schmidt could not drive Dr. Gibson out, she fired her—characterizing Dr. Gibson as being less competent than the substantially younger other employees who had not even mastered the rudimentary skills of analytics that Dr. Gibson taught at the university level.

That stated a claim for age discrimination and hostile environment under both the Age Discrimination in Employment Act and the Florida Civil Rights Act of 1992.

Dr. Gibson filed a charge of discrimination with an EEOC deferral agency, so it was the agency, not Dr. Gibson who authored the charge. When she was fired, she got bounced from agency-to-agency, intake person to investigator, when she tried to amend it. But finally did get a copy of JetBlue's position statement and responded to it in detail prior to the EEOC's closing its investigation.

Under EEOC regulations, as interpreted by Holowecki, her written response qualifies by a charge that could be filed within an expanded time frame under both Frank and Sanchez.

In summary, Dr. Gibson suffered both hostile-environment and tangible-detriment discrimination under both the ADEA and the FCRA, she timely filed a charge of discrimination and she should now be allowed to litigate it.

**Conclusion**

Based on the authorities cited and the arguments presented, plaintiff, Lynne M. Gibson, Ph.D., respectfully requests this Court to deny Defendant Jetblue Airways Corporation's Partial Motion to Dismiss Plaintiff's Complaint [DE 25], and to grant such other and further relief as is just.


Respectfully Submitted,

s/   *William R. Amlong*
WILLIAM R. AMLONG
Florida Bar No. 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No: 275565
KAmlong@TheAmlongFirm.com
JENNIFER DALEY
Florida Bar No. 856436
JDaley@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth St., Second Floor
Fort Lauderdale, Florida  33301
(954) 462-1983 / 523-3192 Fax

***Attorneys for the Plaintiff,***
   ***Lynne M. Gibson, Ph.D.,***
   ***f/k/a Lynne M. Gleiber***

## Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed using the ECF function of United States District Court for the Middle District of Florida and thereby has been distributed to all of the parties and counsel of record in this matter.

/s/     *William R. Amlong*
WILLIAM R. AMLONG

## Service List

| | |
|---|---|
| WILLIAM R. AMLONG<br>Florida Bar No.: 470228<br>WRAmlong@TheAmlongFirm.com<br>KAREN COOLMAN AMLONG<br>Florida Bar No.: 275565<br>KAmlong@TheAmlongFirm.com<br>AMLONG & AMLONG, P.A.<br>500 N.E. Fourth St., Second Floor<br>Fort Lauderdale, Florida  33301<br>(954) 462-1983 / 523-3192 Fax<br><br>***Attorneys for the Plaintiff,***<br>    ***Lynne M. Gibson, Ph.D.,***<br>    ***f/k/a Lynne M. Gleiber*** | JESSICA T. TRAVERS<br>Florida Bar Number: 18129<br>jessica.travers@akerman.com<br>AKERMAN LLP<br>50 North Laura Street, Suite 3100<br>Jacksonville, FL  32202<br>(904) 798-3700<br><br>RAYMOND J. BERTI<br>New York Bar Number: 5207782<br>raymond.berti@akerman.com<br>666 Fifth Avenue, 21st Floor<br>New York, New York 10103<br>(212) 880-3800<br><br>***Attorneys for the Defendant,***<br>    ***JetBlue Airways Corp.*** |

C:\Users\yharris\Desktop\__Client Folders\Gibson\181208 Response to Mot on to Dismiss (1).wpd